FILED
U.S. DISTRICT COURT
DISTRICT OF NEBRASKA

IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF NEBRASKA   2025 JUL 10 PM 4:04

OFFICE OF THE CLERK

| | |
|---|---|
| Kirk: Engel<br>　　　　Plaintiff<br><br>vs.<br><br>SARPY COUNTY ATTORNEY<br>MATHEW C. VOLKER<br>　　　　Defendant(s) | Case No.: 8:25-cv-00390-SMB-RCC<br><br>**COMPLAINT** |

### Verified Complaint For Declaratory and Injunctive Relief

Pursuant to Rule 65(b) of the Federal Rules of Civil Procedure Kirk: Engel in propria persona state as follows for their Complaint for Declaratory and Injunctive Relief against Sarpy County Attorney's Office and Mathew Volker

### Introductory Statement and Importance of the Issues

In Nebraska, a driver's license can be suspended for failure to comply with a ~~child support~~ order. The Department of Health and Human Services (HHS) notifies the Department of Motor Vehicles (DMV) of non-compliance. To reinstate a license, a "Notice of Compliance" from the HHS director and a $50 reinstatement fee are typically required, according to the Nebraska Department of Motor Vehicles (.gov).

Plaintiff claims that enforcement procedures deprived him a of necessary due process protections provided by both the NE and U.S. Constitutions in that they: (1) provided inadequate notice and opportunities to be heard before driver's licenses was suspended; (2) was arbitrary in nature; and (3) did not provide attorneys to represent Plaintiff as an indigent before or after the suspensions took effect. The enforcement procedures violated certain statutory guarantees afforded to Plaintiff. Additionally, Plaintiff argues that driver's license suspensions disparately impact people who just can't afford to pay. To that end, Plaintiff provides that the suspensions unfairly punished Plaintiff who was not willfully noncompliant with child support orders and worsen the financial conditions of indigent obligors making it more difficult for them to make child support payments.

1

Sarpy County Attorney's Office and Mathew Volker were aware that relevant statute and enforcement procedures were coercive to foster compliance with IV-Dt obligations and that they did not comply with Plaintiffs' constitutional and statutory rights. This Court should grant summary judgment to Plaintiff on these procedural due process claims as well as limited relief on Plaintiffs' right to counsel claim for the reasons that follow.

**Procedural Due Process/Fundamental Fairness**:

Because the NE Constitution goes further in protecting Plaintiffs procedural due process rights than the U.S. Constitution, the Court should look primarily to Nebraska's precedents to resolve the procedural due process questions regarding the automatic driver's license suspension process before it. "Indeed, fairness and flexibility should be valued in Nebraska, and this Court should take notice of procedural protections beyond those that may be required constitutionally in order to protect against arbitrary governmental action. Under the Nebraska Constitution, the starting point for applying both procedural due process and concepts of fundamental fairness is the same, and thus this Court should considered procedural due process and fundamental fairness together.

This Court should find troubling: (a) inconsistencies regarding both whether notice of an imminent suspension was provided in advance of the government action in the various forms and language that NEHHS had used prior to imposition of any actual suspension; (b) "that driver's licenses [we]re routinely suspended prior to providing Plaintiff with confirmation of that 'grievous' governmental action, thus allowing Plaintiff to unwittingly violate the law by driving on a suspended license and exposing Plaintiff to significant penalties"; (c) "statistics showing that the implementation of the IV-D statutory scheme has resulted in over 99% of all driver's license suspensions being accomplished by reliance on the automatic suspension option, the only statutory option that does not explicitly require advance notice and an opportunity to be heard before a suspension is imposed"; and (d) "that driver's license suspensions affected the Plaintiff to a much greater extent

than other income groups." See *Mathews v. Eldridge*, 424 U.S. 319 (1976) procedural due process balancing test:

**The Private Interest**

This Court should recognize that a driver's license is nearly a necessity' as it is the primary means that most people use to travel to work and carry out life's daily chores." (citing *State v. Moran*, 202 N.J. 325 (2010) (quoting *State v. Hamm*, 121 N.J. 109, 124 (1990), *denied*, 499 U.S. 947 (1981)). The Court should take "judicial notice of the study published by the United States Census Bureau in 2013 showing that 76.4% of American workers regularly drive to work alone," which led it to conclude that losing the right to drive would interfere "with the ability of most workers to access their employment." Further, the Court should reference additional studies and a report released by the New Jersey Supreme Court Committee on Municipal Court Operations, Fines, and Fees which highlighted the devastating economic effects that further destabilize families and dependents of those with suspended licenses.

The Court also take judicial notice of a report that found "when compared to high-income individuals (yearly income over $100,000), low-income individuals (yearly income under $30,000) were nearly four times more likely to lose a job following a license suspension and three times more likely to be unable to pay increased insurance costs." Ultimately, the Court should find that given the exposure to severe penalties and other negative consequences that can result from driver's license suspensions, including an increased difficulty in obtaining or retaining employment and encroaching upon Plaintiffs' inherent right to making life, liberty, and the pursuit of happiness extremely difficult. The automatic suspension of licenses upon issuance of an [failure to pay] warrant remains a consequence of magnitude no matter the length of the suspension or the ease with which it can be rectified for some affected men. Plaintiffs' has demonstrated that my interest in retaining my driver's licenses is a substantial property interest requiring significant procedural protections.

**Notice**

This Court should conclude that the general notice provisions did not satisfy due process, particularly in light of the serious direct and indirect consequences associated with the suspension of driver's license. This Court should find it especially troubling that Plaintiff learned of his license suspensions after the suspensions toke effect when I may already have unwittingly exposed myself to violating the law, and after I was arrested for driving with a suspended license and spent a month in jail because at that point, I have already exposed myself to significant penalties and have been deprived of the opportunity to comply with the law to avoid a consequence of magnitude.

In sum, this Court should hold both the frequent lack of advance notice and the total failure to specify the effective date of the suspension when notice is provided to be insufficient under both procedural due process and fundamental fairness principles. This Court should order Defendants to develop an administrative process that ensures that proper notice is sent to Plaintiff prior to the effective date of a license suspension, and that Plaintiff receive advance notice of the dates when his driver's licenses will be suspended."

**Opportunity to be Heard:**

This Court should acknowledge that since the suspension of Plaintiffs' driver's license was a consequence of magnitude with the significant direct and indirect consequences, the opportunity for a pre-deprivation hearing was required by due process or, at the very least, by principles of fundamental fairness." The Court should reason that allowing Plaintiff to be threatened with license suspensions to present individual circumstances regarding his economic hardships and the personally devastating impacts upon them of losing his driver's licenses would lessen the likelihood that suspensions will be imposed upon Plaintiff who was never notified that support owed to the NEHHS.

This Court should further take notice that suspending Plaintiff driver's license was erroneous if Plaintiff was not delinquent and the NEHHS failed to provide me with sufficient process to determine this fact." (citing *State v. Beans*, 965

4

P.2d 725, 728 (Alaska 1998) (observing that a statute authorizing driver's license suspensions for delinquent child support would be unconstitutional as applied to those who were unable to pay. Thus, this Court should order the IV-D agency to provide consistent advance notice of driver's license suspensions to prospective recalcitrant people specifying a date certain on which the Plaintiff's driver's license will be suspended and offering him some time to take action to prevent a suspension or to request a hearing prior to imposition of the suspension. Citing the undue difficulty it would involve to identify and undo the suspension that have occurred and return the restoration fees already paid since the complaint was filed the Court should award Plaintiff retroactive relief.

In brief, the Court should hold that it was a violation of the procedural due process rights of Plaintiff for the NEHHS to suspend driver's licenses for nonpayment of child support without providing the Plaintiff with advance notice of the action and an opportunity to be heard.

**Right to Counsel:**

Precedent requires that counsel be appointed for an indigent litigant when a court action could result in a consequence of magnitude. (citing *Rodriguez v. Rosenblatt*, 58 N.J. 281, 294–95 (1971) ("as a matter of simple justice, no indigent defendant should be subjected to a conviction entailing imprisonment in fact or other consequence of magnitude without first having had due and fair opportunity to have counsel assigned without cost."); *Pasqua v. Council*, 186 N.J. 127, 147–48 (2006) (requiring counsel for indigent child support obligors facing incarceration "protects important constitutional values, including the fairness of our civil justice system"); *Moran*, 202 N.J. at 325 ("loss of driving privileges for a reckless-driving conviction [before a municipal court judge] constitutes a consequence of magnitude that triggers certain rights, such as the right to counsel")). "A driver's license suspension is a consequence of magnitude that triggers the right to counsel in criminal and municipal court cases." (citing *Rodriguez*, 58 N.J. at 295 ("a substantial loss in driving privileges" is a consequence of magnitude); *Pasqua*, 186

N.J. at 148–49 ("'the substantial loss of driving privileges' [is] one type of 'serious consequence that warrants assigning counsel to an indigent defendants. *Moran*, 202 N.J. at 325). Thus, "both due process and fundamental fairness require courts to provide counsel to indigent obligors at any hearing at which a hearing officer may recommend a driver's license suspension to a court, or at any hearing when the family court itself is considering a driver's license suspension."

**Request for Relief**

WHEREFORE, Plaintiff Kirk respectfully request that this Court enter an Order: a. Declaring that, insofar as it applies to violation of due process prior to driver's license suspension was unconstitutional, invalid, and inconsistent with the requirements of law, and void; b. Preliminarily and permanently enjoining the Sarpy County Attorneys Office and Mathew Volker from taking any action to enforce the foregoing provisions against Plaintiff c. Award Plaintiff my costs and fees expended in connection with this Granting Plaintiff Kirk any and all such other and further relief as the Court deems necessary and appropriate.

Respectfully Submitted

*Kirk: Engel*

Kirk: Engel